## HORNER v. WEBENDORFER.

(Supreme Court, Appellate Division, Second Department.   December 30, 1910.)

1. BREACH OF MARRIAGE PROMISE (§ 35*)—ACTION—INSTRUCTION.

In an action for breach of promise to marry, where defendant had made a proposal, including an agreement for separation under certain conditions, such proposal to be accepted before a certain date, and after such date defendant made another proposal, but contends that, if there was any agreement under the latter, it must be construed in the light of his former proposal, an instruction that, in order that there should have been a contract on the date of the later proposal, the minds of the parties must have met on and agreed on the same thing, that is to say, that if one understood the proposition in one way and the other in another, a case of misunderstanding, then there was no contract, was sufficiently favorable to defendant.

[Ed. Note.—For other cases, see Breach of Marriage Promise, Cent. Dig. § 51; Dec. Dig. § 35.*]

2. BREACH OF MARRIAGE PROMISE (§ 21*)—ACTION—EVIDENCE—ADMISSIBILITY.

A letter of defendant in an action for breach of marriage promise, complaining of the way in which plaintiff had received him on a certain occasion, and stating that a woman who welcomes a man whom she proposes to trust only when it suits her, and not at all times, he did not want anything to do with, was not such a final breach of a contract to marry as to render inadmissible plaintiff's letter in reply thereto, which intimated a desire on her part to maintain the previous relations between them.

[Ed. Note.—For other cases, see Breach of Marriage Promise, Cent. Dig. §§ 28–30; Dec. Dig. § 21.*]

3. COSTS (§ 164*)—EXTRA ALLOWANCE—GROUNDS—"DIFFICULT AND EXTRAORDINARY ACTION."

An action for breach of marriage promise was not a "difficult and extraordinary action," within the statute, and the court was not authorized to grant an allowance in addition to costs.

[Ed. Note.—For other cases, see Costs, Cent. Dig. §§ 620–636; Dec. Dig. § 164.*

For other definitions, see Words and Phrases, vol. 3, p. 2064; vol. 8, p. 7637.]

Hirschberg, P. J., dissenting in part.

Appeal from Trial Term, Dutchess County.

Action by Mary Horner against Henry Webendorfer. From a judgment in favor of plaintiff, and from an order denying a new trial, defendant appeals. Modified.

Argued before HIRSCHBERG, P. J., and WOODWARD, BURR, THOMAS, and CARR, JJ.

George W. Morgan (Henry H. Abbott and Lester C. Burdett, on the brief), for appellant.

Charles Morschauser, for respondent.

BURR, J.   Plaintiff, a mature woman 48 years of age, brings this action against defendant, aged 61, to recover damages for breach of promise to marry.   A jury, finding in her favor, assessed the damages

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

at $7,000. From the judgment entered on the verdict, and from an order denying a motion for a new trial, this appeal is taken.

There was evidence from which the jury were justified in finding that on the 12th of September, 1909, defendant asked plaintiff to marry him, and that, surprised by the suddenness of the proposal, she stated that she was unable at that time to give him a definite answer. On the succeeding day defendant wrote plaintiff a letter, in which he coupled with his proposal of marriage several commercial propositions. Among these was one which, if accepted, might be construed as a proposal for a separation if the parties did not "get along" together, and fixing various sums which should be paid to plaintiff in the event of separation; such sums varying according to the length of time that the parties might live together. By this letter plaintiff was given until the 25th of September to accept or reject his propositions, and the letter concluded with a statement that, if accepted, a contract would be drawn embodying its terms. It may be that, if this had been the only proposal made and accepted, the contract to marry would have been void as against public policy, and unenforceable. It is conceded that plaintiff did not reply to this letter before September 25th, and that on the succeeding day defendant called upon her at her sister's home, and they spent the greater part of the day together.

Plaintiff's evidence is to the effect that in the afternoon of that day defendant submitted another and unqualified proposal of marriage, which she then and there accepted, such marriage to take place on November 1st. To some extent she is corroborated by her sister. The learned trial justice instructed the jury that, in order to find a verdict for the plaintiff, they—

"must find it established by the greater weight of the evidence that the agreement that they made on the 26th of September was a mere agreement to marry at the date they fixed; that it was not the agreement to marry upon the conditions and terms set forth in the letter of the defendant of September 13th."

And the jury were further instructed that, unless they found that to be established, their verdict must be for the defendant.

Defendant contends that, if there was any agreement entered into on September 26th, it must be construed in the light of the letter of September 13th. Plaintiff testified that the letter was not referred to until an hour after their engagement, and that when it was spoken of she said:

"I did not want my engagement mixed up with business matters. It was time enough to settle that after we were married."

At the request of the defendant the jury were further instructed that, if the minds of the parties—

"did not meet upon some proposition, then there is no contract of any sort. If that is what you mean, I will charge it. The jury is not to misunderstand that. It is not the instruction that if they did not agree to the proposition in the letter of September 13th there was no contract. It is simply this: That in order that there was a contract at all on the 26th of September, their minds must have met and agreed upon the thing; that is to say, that if one understood the proposition in one way and another in another, a case of misunderstanding, then there was no agreement, no contract."

We think that this was as favorable a charge as the defendant was entitled to, and he seems to have been satisfied, for no exception thereto was taken by him.

Subsequently to the making of the contract to marry defendant seems to have become dissatisfied with the warmth of plaintiff's expressions of affection, and on the 20th of October he wrote her a letter, which she received two or three days later. On the 24th of October she wrote a reply to this letter. The parties did not meet after this, and on the 4th of December defendant married a woman other than the plaintiff.

When plaintiff's letter of October 24th was offered in evidence, it was objected. to upon the ground that it was after the breach of defendant's contract, and was in the nature of a self-serving declaration. We do not think that the objection was well taken. Defendant's letter of October 20th was as follows:

"The chilly reception you gave me Saturday October 1, 1900, the sour face you left in my memory, and the honest kiss you rejected then, discourages me to continue my suit to your affection. I can only conclude that you either do not care for me or don't know how. A woman who welcomes a man whom she proposes to trust only when it suits her, and not at all times, I don't want anything to do with."

We do not deem this to be an unqualified refusal on defendant's part to perform his contract, although it contained a clear intimation that he was ready to cancel the same. Plaintiff was justified in showing that she did not accede to this suggestion, and the request contained in her letter for a further interview clearly indicates a desire upon her part to maintain the previously existing relations between them.

Although the complaint alleges that the breach of the contract occurred on or about October 20th, we think that the only conclusive evidence of the breach is found in defendant's failure to appear upon the 1st of November, the date agreed upon for the marriage, and his subsequent marriage to another on the 4th of December. Therefore the letter of October 24th was not subsequent to the breach.

On motion of plaintiff, the court granted an allowance in addition to costs. We do not think that this case was at all difficult or extraordinary, within the meaning of these words as used in the statute.

The judgment should be modified, by striking, therefrom the amount of the extra allowance, and, as so modified, the judgment and the order denying the motion for a new trial should be affirmed, without costs.

WOODWARD, THOMAS, and CARR, JJ., concur. HIRSCHBERG, P. J., dissents from the modification, on the ground that the motion for an extra allowance was made in open court, and no opposition was made to it.